May it please the Court, the Federal Tort Claims Act waives the sovereign immunity of the United States for torts of federal agents when private persons in similar or like circumstances would be liable. When unique governmental functions form the basis of the tortious conduct, Olson requires us to choose a state standard that best resembles the liability imposed on private persons, not the principles of liability imposed on state or municipal entities. In response to Olson, this circuit in Villafranca distinguished between state immunities or waivers of immunity and state privileges. The Villafranca Court found that Olson barred state immunities but permitted state privileges because of the qualitative differences between the two, as pointed out in the District Court Garza decision. As a result, in Villafranca, the United States was permitted to use the state law privilege of reasonable force when effectuating a lawful arrest. In this case, the government, in this case, the state law privilege alleged by the government permits operators of emergency vehicles to violate enumerated traffic laws when responding to an emergency so long as they don't act with reckless disregard for the safety of others. And that's found in 546.005 of the Transportation Code. You said immunity, right? Not privilege. I'm asking. Well, the state law privilege, I would like to, I'll get to that issue, whether it is a privilege or an immunity in a bit here, Your Honor. To the extent that the government relies on the partial waiver of sovereign immunity found in 101.0552 of the Texas Tort Claims Act, we urge the court to find that that section is a state partial waiver of immunity which Olson prohibits. Either way, it is our position that Officer Rocha, Officer Rocha's conduct fell below any standard of care that this court articulates, and therefore the district court erred in granting summary judgment for the government. I have been quite humbled by the complexity of the Federal Tort Claims Act. It involves issues of state and federal law, and I don't think my brief adequately explains those issues. To the extent that I can help and assist the court in trying to figure this out, I have three issues that I think are important in evaluating a case like this. I think all three issues circle around what standards do we want to give to the district courts in evaluating a case like this. The first issue is, in light of the AFONCA, is there a private person analog that we need to reach? The Supreme Court in Olson requires us to begin the search for a private person analog to satisfy the statutory requirement that in like circumstances. In Indiana Towing, the Supreme Court defined in like circumstances as something that shares the same character of conduct as a private person. So the legal fiction we must create is, you find a private person who is engaged in the same character of conduct, and then ask the question, what principles of liability does the state apply to those persons? The simplest answer to that question is just a distracted driver, under the facts here, is just a distracted driver that takes a wide right turn and causes an accident. Under this analog, a negligence standard would apply, and Officer Rocha was required to exercise reasonable care under the circumstances towards . . . Are you urging that a negligence standard should apply here? To the extent that the Texas Transportation Code privilege relies on the Texas Tort Claims Act, I think that that might have to be the standard under Olson. Because if this court is to rely on a state immunity, then it's our position that that would be in violation of the holding in Olson. So if that's the private person analog that this court could use in evaluating these facts. Now, granted that does not take into consideration the officer's duty as an employee of the federal government, but . . . so there may be another analog, and through a hodgepodge of different Texas laws, I think I got one. Another private person analog can be a person who, while effectuating a citizen's arrest, injures an innocent third party. Under this analog, a citizen's arrest is permitted under Texas law, and that's in Article 14.01 of the Texas Code of Criminal Procedure. And it states, a police officer or any other person without a warrant may arrest an offender when the offense is committed in his presence or within his view, if the offense is one classified as a felony or an offense against public peace. In Texas, one commits the felony of evading arrest with a motor vehicle under Penal Code Section 38.02 if he flees from an officer trying to effectuate an arrest with a motor vehicle. That is a felony. To add another layer to this private person analog, if a private person . . . well, Agent Rocha did witness the fleeing suspect commit a felony. If a private person, he, Agent Rocha, would be authorized to arrest. To add this another level, though, a private person would be justified under Texas Penal Code 9.05 in harm to an innocent third party so long as he doesn't act recklessly. Counsel, you were going, as you acknowledged earlier, you were a little dissatisfied with your briefing and you're trying to give us some other considerations. You're certainly right that we start with the situation of liability under state law. But this circuit, as you acknowledge in your brief, I think, has recognized state law privileges or a defense to these cases. And so the Texas Transportation Code has a privilege for authorized emergency vehicle operators and that's where this whole recklessness concept has been discussed. It does seem to me that that's the right way to proceed and I think it would be helpful if you'd address that in the time that you have left. Thank you, Your Honor. In skipping to what I consider Issue 3, if it is a state privilege, there are still material fact questions that exist and one in particular that I'd like to emphasize today. Whether Agent Rocha slowed down for safe operation when he entered that intersection between Highway 281 and Old Military Road. Although none of the enumerated privileges in 546.001 through 5005 seem to apply directly to these circumstances, the closest one that could potentially apply here is 546.0012. And it allows an operator of an emergency vehicle to proceed past a red light or stop signal after slowing down for safe operation. Texas cases seem to turn on whether the officer applied his brakes before entering the intersection. Let me understand what you just said. The case law in Texas seems to rely on whether the brakes were applied. Yes, Your Honor. There's been a lot of discussion by both parties in their briefing and I must say that issue, factual issue, seems a little bit too narrow to me, but maybe both sides can explain it. It seems to me whether he hit his brakes isn't ultimately, as a factual matter, really dispositive of whether he was reckless in making the turn. When did he apply them? How much pressure? Was he going 90 when he made the turn rather than 95 because he hit the brakes a few seconds beforehand? I mean, all those seem relevant and not just using the brakes at all, but you're saying there's Texas case law that somehow makes that dispositive? Well, Your Honor, in 13th Court of Appeals decision in McFarland, that's a case where two brothers were fighting and so an officer is running to go or driving over and gets into an accident at an intersection. McFarland does, and that was cited by the magistrate's report, in the magistrate's report and recommendation, they cite to Sparks, I mean, yeah, Sparks, Hudson, Kuhn, and Janda, all in different circuits in Texas, and explicitly say that applying the brakes seems to be, well, they say it's a material term under Texas law, a material term in deciding whether the officer used the brakes. And, Counsel, I'm listening to your response. I heard Judge Southwick's question, and I thought his question was whether or not you're claiming that that fact and that fact alone is dispositive on the question of whether or not the officer's conduct, evidence, reckless disregard. So the short answer is, yes, it's dispositive, or no, it's not, right? It's one of the factors, but it's not dispositive. It's not dispositive, I'm sorry. And so, and in a lot of the cases where the privilege is granted, it's an instance where the officer applied the brakes, turned on the siren, and had the blue light going. Right. All right? So as regards to those factors, what's present in this case? Well, in regards to the lights and sirens, the officer, Officer Rocha, had his lights on but not his sirens. Of course, having the sirens on could have helped, but with candor to the court, my client was able to see the lights down the street. And so it seems like the real issue here is whether his wide right turn, whether he sufficiently applied the brakes to maneuver safely. But doesn't the video show the brake lights go on? Well... I mean, doesn't that answer the question? Now, we can argue about how much he slowed, I mean, whether he tapped them or whether he actually applied them sufficiently to slow the vehicle to some extent, but the lights on the, in the video, it looks like his brake lights go on as he approaches. Well, that's a disputed fact as to whether down the road, the video is grainy, it's very hard to understand. It is. I tried real hard to understand how it went. I mean, it seems to focus on a vehicle at the time, down the road. It seems to be Officer Rocha's vehicle. But as the magistrate judge's reporting recommendation notes, you just don't know whether that's just the tail light or the brake light. But I urge... And I guess I want to get back to the siren. Are you conceding that whether or not the siren was on is immaterial because your client saw the light? I'm not conceding that, Your Honor. In fact, Texas case law, you know, really, really seems to focus on both, having both. And as I think it's shown in, I think it's the Hernandez case, border patrol actually required to have two... Turn the light on. I mean, to turn on the siren. Both the siren and the lights, yes, Your Honor. And so, you know, that may be... Is also... Actually, it's not even a controverted fact in this case now. The other... One fact that I really want to emphasize here is that the officer experienced tunnel vision, okay? And still, while experiencing tunnel vision, keeping his eye on the perpetrator, he turns right, you know, without regard, without looking right, which is another factor that Texas courts, you know, look both ways as you cross the street, as you drive. Does the officer actually state in some form that he did, he acknowledges that he did not see your client and your client's car? He does acknowledge that he did not see the car until the moment of impact. That's consistent with what my client says. My client contributed nothing to this accident. Mind you, he was at a stop sign respecting the officers right away during this emergency scenario. All right, counsel. We'll see you on rebuttal. Thank you, Your Honor. May it please the court, Martin Tataro on behalf of the Department of Justice. This case addresses whether the United States may be liable for acts of a border patrol agent who, while chasing a suspected drug smuggler, ran into another vehicle. Under the Federal Tort Claims Act, we look to the law of the place where the incident occurred. Here, it's undisputed that's Texas. Under Texas law, the Texas Transportation Code privilege imposes liability when emergency responders act with, quote, reckless disregard for the safety of others. Now, reckless disregard has a very particular meaning under Texas law according to the Supreme Court of Texas. It means an individual has to engage in, quote, and this is from the Martin decision, an act that the operator knew or should have known posed a high degree of risk of serious injury. And then in that same decision, the Supreme Court of Texas provided further gloss on what exactly that means in contrast to, for example, recklessness in other areas of the law. It says a, quote, momentary judgment lapse or a, quote, mere failure of judgment cannot as a matter of law, as a matter of state law, establish reckless disregard. The district court, in this case, properly applied those state law principles. The border patrol agent was pursuing a suspect and, critical here, made a split second decision to turn right when he had the right-of-way, albeit the allegation is that he was speeding, but he allegedly turned too wide and crashed into Mr. Martinez's vehicle. At most, and I cannot emphasize that enough, that is a momentary judgment lapse. It is not reckless disregard as a matter of law under Texas state law. I want to get into that just a bit more and your understanding of Texas law on this. We're at summary judgment stage. The question of, and we don't know exactly how fast the officer was going, probably never will know, but it can be estimated in various ways. Let's just take a hypothetical driver with a border patrol emblem on his vehicle who takes a turn at 100 miles an hour, having slowed down with modest applying brakes from some higher speed, doesn't look to who might be in that road before he turns on it. Now, that decision to turn is going to be done instantaneously as far as we know, unless he acknowledges I was thinking about making that turn, I saw he was going to go that way, but absent some sort of acknowledgement that he had given it a fair amount of thought, it's probably going to be a disdain to his turn. Are you saying no matter how reckless in the general concept of it, unrelated to Texas law, such a turn might have been, the fact it was done and has to be done instantaneously almost, will always bar that from liability? With one caveat, Your Honor, Judge Shotwell, the answer is yes, and that's if the right turn was made in response and almost immediate to another vehicle crashing, as in this case, coming across the road and crashing. And so as long as we know that the decision was made as a split-second response, I think the speed itself is irrelevant under the Amarillo decision under the Supreme Court of Texas. That is at most a momentary judgment lapse. Well, one way in the vernacular at least, layman's terms, which I probably use more often than legal terms, it's crazy to take a sharp right turn at 100 miles an hour or 90 miles an hour without looking to see who's there. But that craziness is going to be done in a very short time frame, the thought processes that led to it. And your interpretation of Texas law may be exactly correct, but it does seem to allow for an awful lot of very unfortunate conduct on the part of law enforcement. Indeed, Judge Shotwell, but in this very particular narrow context, the Supreme Court of Texas has been crystal clear. Momentary judgment lapses are not . . . the privilege applies in that particular scenario. And I'd also point out that there's no suggestion that the border patrol agent in this case was going 100 miles an hour. The highest rate of speed in the record, I believe . . . I'm sorry, Your Honor? You're probably about to tell me what does seem to be the best evidence of the speed. Unknown, Your Honor, there are a couple factors. There's testimony that suggests that he was going between 65 and 70 miles an hour. There is the video itself, which absolutely, Grant, is not crystal clear and far from it, shows that he slowed down. There's the magistrate judge who, while disagreeing with the United States on the ultimate conclusion, at page 402 of the record on appeal indicated that he slowed down when he was making the turn, even if there was a dispute, although we don't think there is a dispute about whether the brake lights themselves . . . Is there any question that those lights, whatever they are, are on the border patrol vehicle? I heard your friend on the other side suggest that perhaps it's not clear that it's even the border patrol vehicle. Your Honor, prior to this morning's oral argument, I thought it was uncontested that this is a government-owned vehicle and that the lights but not the siren were on. And the reason why the siren is important often in the cases we cite and Mr. Martinez cites, it's because when you're entering an intersection against a red light, you don't ordinarily have the right-of-way. And so that's why in those cases, it's critically important in the court's look to whether the government-owned vehicle slowed down or whether the lights were on, whether the siren was on, to give warning to the other drivers who are otherwise merely proceeding on their way. Here, the situation is critically different because, as we heard in the opening, whether the sirens were on or not wouldn't have made a difference to Mr. Martinez's actions. He was simply sitting innocently at the intersection at a stoplight. So the critical inquiry here is whether the instantaneous split-second decision to make a right turn while pursuing a suspected drug smuggler who had, as we know from the video, immediately crashed, which is why he made that split-second decision, is reckless under Texas law. And the City of Amarillo v. Martin case is crystal clear on that point. Momentary lapses of judgment, while in some individuals' views, might be viewed as sort of, to use Judge Southbrook's term, crazy in other contexts. In this particular context, because of the importance and the need for emergency responders to, under the Supreme Court of Texas terms, to make split-second decisions, even if it is going to create some sort of risk for others, there is no liability in that particular scenario. Don't the facts show that the person being chased was out of his car, the crash had already occurred, was running before the turn was made? Your Honor, the video is, yes, there is testimony. The turn was made to chase somebody on foot, not to keep up with somebody in a car. I just want to be clear that that is absolutely the Border Patrol agent's testimony that he had tunnel vision on the individual after exiting the vehicle, but this isn't a situation where it was 20 seconds or a minute or five minutes later. This was a very compressed timeline where the fleeing vehicle crashed into the ditch. I think there's testimony that the door was open before the crash even finalized, and then he exited the vehicle, and that was when there was a split-second decision. So here we're talking about mere seconds at most. I'm happy to answer any other questions the Court has, but otherwise we ask for the District Court's judgment to be affirmed. Thank you, Counsel.  Your Honor, I would like to address the issue raised about whether this was a split-second decision. The video, if you watch the video, you'll see that the perpetrator is crossing Highway 281, and Officer Rocha has, I think we counted it, about eight, nine seconds to make a decision. So what starts that clock? What's the first second? When are you saying he had eight or nine seconds to make a decision? So what starts that timing in your mind? Let me step back a few steps here on this thing, because Agent Rocha's at the Calicia Patch, and that's down to Highway 281. He gets radioed in that somebody's coming from the river. So the perpetrator hits the, he comes out of Longoria Street onto 281, takes a right, misjudges it because he's going so fast, hits a bump, and then kind of has a diagonal trajectory. So I think it could be argued that since Agent Rocha had a clear line of sight when the perpetrator popped his head out into, onto 281, I think you can bring back this scenario even further. But to answer your question, the video shows . . . Just make sure we're focusing on the same thing. Your able opponent on the other side is talking about Texas law and instantaneous whatever that might mean, less than a second and a half. I don't know what that means, but anyway, a very quick decision. So you say he actually had eight or nine seconds. I'm just trying to find out without, you know, an awful lot of other, when do you say the thought processes for the agent should have, could have, would have begun prior to that turn, and why are you saying it's eight seconds? So what was occurring at the eight second out mark that you're starting this clock from? Okay, well, considering his training and experience, when he's parked on call at the, at the Caliche patch down the road, I feel like that helps, that should guide the court, I mean, he should have training and experience to deal with what would happen if anything . . . He knows he's going to be in a high speed chase or potentially, and so he needs to be aware of how to react to that. So I got that. But we're talking about the decision to make that turn that hit your client. When can we start the clock on that decision in your mind, that decision to make the turn, which it seems to me, and you can argue differently, would not have occurred until you saw the suspect running that direction, which was the reason to make the turn. I think that when the, when the vehicle lost control at the, at the intersection between Longoria Street and, and 281, it hit a bump, and it's in Officer Rocha's depot, and so it kind of takes this trajectory that's wild, okay. So I would say, I would submit to the court that that would be the time when this became an emergency. So that would place it, I think, at about eight seconds. All right. Your Honor, with the remaining time . . . So you're saying that's the moment when he would have begun considering whether or not he was going to make the turn. Is that what you're saying? I guess that would be . . . Let me put it another way. Is that the moment where it would have become obvious that making the turn would put him in a closer proximity to the suspect that he was chasing? Yes, Your Honor. I submit to you, yes, because the trajectory of the car, regardless of whether he jumps out or not, ends up at that place, and so he's able to circumvent and, and, and kind of tactically find, get to the car if he turns on Old, Old Military Road. With the remaining time I have, Your Honor, I, I submit the court should, I think it's informative to look at the distinction, and this was briefed down at the lower court, but look at the distinction between Hartman and Martin. Remember, Martin, in Martin, the Texas Supreme Court, in order to not read the, the partial waiver of immunity as meaningless in the Texas Tort Claims Act, they read into it a, a reckless standard. But remember, it's hard to distinguish, set the standard at Martin because Martin has to be read in conjunction with the Texas Tort Claims Act, reckless disregard or conscious indifference standard. Under 2680, there is no such exception in, under the Federal Tort Claims Act. All right, counsel. Thank you, Your Honor. Thank you both. We'll take a brief recess before.